*599 OPINION OF THE COURT
Frank J. LaBuda, J.
Petitioner seeks CPLR article 78 relief requesting an order from this court for the respondent to credit him with jail time credit for the time spent in Stone Bridge Rehabilitation Hospital in Lynn, Massachusetts, prior to sentencing and report said jail credit to the New York State Department of Correctional Services.
Sullivan County Attorney submitted a verified answer as the attorney for respondent.
Pursuant to this court’s decision and order dated September 15, 2004 responses were invited from the Sullivan County District Attorney and the Attorney General of the State of New York as “interested” parties.
Both the Sullivan County District Attorney and the Attorney General of the State of New York submitted affirmations in opposition.
Petitioner’s attorney, Prisoners’ Legal Services of New York, submitted a reply to the Sullivan County Attorney’s verified answer.
Facts
On May 25, 2001, pursuant to a plea agreement, the defendant (now petitioner) pleaded guilty to superior court information (SCI) No. 101W-01 charging him with sodomy in the first degree in violation of Penal Law § 130.50 (1), a class B violent felony.
His conviction arises from a January 1, 2001 incident wherein the defendant, after assaulting his former girlfriend by choking and striking her with an empty glass tea bottle causing extensive bleeding and lacerations, sodomized her by anal penetration with his penis despite the fact that he is severely and permanently brain injured and partially paralyzed.
Said negotiated plea disposition required a five-year determinant state prison sentence.
The defendant requested, with consent of the People, to defer the sentencing for approximately two years. The deferment was for the defendant to be released on bail (ROR to his father) to seek rehabilitation for serious mental and physical conditions arising from a prior motorcycle accident at the Stone Bridge Rehabilitation Hospital in Lynn, Massachusetts. It was alleged that without such rehabilitation the defendant might not *600 survive his state prison sentence as he would be a risk to himself and others.
Pursuant to said request this court held a fact-finding hearing.
At the hearing, it was established, and conceded by both parties, that the defendant was a 23-year-old man who suffered a severe traumatic brain injury in a motorcycle accident in 1996.
As a result of said accident, defendant was unconscious and in a coma for about seven weeks. He sustained a head injury with permanent injury to the left brachial plexus of the brain. His left arm and hand were also permanently and completely paralyzed.
Approximately two years later, in 1998, defendant developed a tremor in his right hand suffering from posttraumatic dystonia.
The defendant then had surgically implanted, in his brain, a thalmaic stimulator with a battery pack imbedded in his chest and the wires from the battery to the stimulator running through his shoulder, up through his neck and into his brain stem.
The thalmaic stimulator and, indeed, the defendant’s medical treatment was on the “cutting edge” of neurological technology and was implanted to stabilize a serious decline in the defendant’s functional capacity. The defendant’s permanent brain injury adversely affects the functional capacities including attention, impulse control, social awareness and all higher executive functions including judgment and planning because of the diffuse axonal injury wherein the frontal lobes were partially disconnected.
It was undisputed that all medical testimony concurred that without extensive rehabilitation prior to sentencing the defendant would be a risk to himself and others in an average state prison setting and pose a serious liability to the New York State Department of Correctional Services.
This court then weighed the positive effects of such rehabilitation for the survival of the defendant in state prison and the risk to the community from a convicted violent sex offender with such neurological and physical conditions to be released to the Stone Bridge Rehabilitation Hospital in Lynn, Massachusetts.
It was also undisputed that the hospital would classify the defendant as an “at risk” patient. Accordingly, he would be housed in a men’s ward which has limited and controlled access. *601 Though defendant would not be handcuffed or restrained, said men’s ward has a single exit and is manned 24 hours per day.
After the fact-finding hearing this court issued a decision and order dated June 15, 2001, granted defendant’s request with the People’s consent to defer sentencing and specifically stated, on pages 4 and 5, that the allowed deferment for rehabilitation “is in no way designed nor intended to reduce or in anyway suspend the five year State’s prison sentence.”
This court then issued an order also dated June 15, 2001 ordering the Sullivan County Sheriffs Department to release the defendant to the care and custody of his father for transportation to the Stone Bridge facility in Lynn, Massachusetts, by 5:00 p.m. on June 18, 2001.
The defendant was returned to the Sullivan County Court and was sentenced on July 25, 2002 pursuant to the plea agreement to a determinant five-year term in state prison.
The petitioner now, in 2004, seeks jail time credit pursuant to time spent “in custody” in the Stone Bridge Rehabilitation Hospital in Massachusetts prior to sentencing in Sullivan County Court.
Petitioner’s Argument
Petitioner argues that the time spent in the Stone Bridge Rehabilitation Hospital constituted time spent “in custody” under Penal Law § 70.30 (3) and the Sullivan County Sheriffs Department must be ordered by the court to properly give petitioner such jail time credits and certify same to the New York State Department of Correctional Services (DOCS).
In support, petitioner relies on Matter of Hawkins v Coughlin (72 NY2d 158 [1988]).
The Court of Appeals in Hawkins (supra at 162) established that the term “custody” in Penal Law § 70.30 (3) was intended to be “confinement” or “detention” under guard and not “constructive custody” such as release or bail and the provisions “ ‘makes it clear that jail time includes time spent in “custody” no matter where the time was spent.’ ”
Petitioner also argues that the matter at bar is similar to Matter of Lawson v Drug Abuse Control Commn. (50 AD2d 1019 [3d Dept 1975]), wherein the Court granted petitioner jail time credit for the time he was in Woodbourne Rehabilitation Center.
Petitioner also cites Coleman v New York State Dept. of Correctional Servs. (44 AD2d 833 [2d Dept 1974]) arguing that the *602 Court in denying jail time credit (because Coleman’s confinement in the Rockland State Hospital was voluntary and that said time was unrelated to the charge that culminated in his sentence) is the opposite of the facts herein and, thus, petitioner should be credited with his time spent in Stone Bridge Rehabilitation Hospital.
Analysis
Penal Law § 70.30 (3) states, in pertinent part, “the term of a definite sentence . . . shall be credited with and diminished by the amount of time the person spent in custody prior to the commencement of such sentence as a result of the charge that culminated in the sentence.” (Emphasis added.)
The petitioner’s reliance on Hawkins (supra) is misplaced. The petitioner herein was not under guard in the “custody” sense as there were no handcuffs or confinement of movement save leaving the grounds of Stone Bridge. In addition, under Hawkins petitioner was only in “constructive custody” as he was on bail to Stone Bridge at his own request and not as part of the charges that culminated in his sentence.
Petitioner’s reliance on Coleman (supra) and his comparison to the within matter is in error. The Court’s finding that Coleman should not get jail time credit as his institutionalization was voluntary and not related to the charges which culminated in his sentence is apropos herein and not opposite of these facts.
Conclusion
This court finds that petitioner’s request in May 2001 to seek rehabilitation at the Stone Bridge Rehabilitation Hospital in Lynn, Massachusetts, for purposes of preparing him to successfully complete an agreed upon state prison sentence was voluntary. (See, People v Graham, 89 AD2d 671 [3d Dept 1982].)
In addition, his attendance at Stone Bridge Rehabilitation Hospital was “constructive custody” as he was on bail during his rehabilitation. (See, Hawkins, supra; Matter of Poole v Koehler, 160 AD2d 880 [2d Dept 1990].) Indeed, his “custody” was a considered concession to his medical conditions which the defendant now seeks to use as cause for reneging on his agreed upon sentence in state prison.
Furthermore, his stay at Stone Bridge for rehabilitation was not part of the charges which culminated in his sentence. This court could have denied his application for rehabilitation and sentenced him to state prison instead.
*603 Lastly, petitioner was fully aware that this court’s allowance for the deferment of sentencing for his voluntarily seeking rehabilitation, which was beneficial to him and irrelevant to the prosecution of his charges, was done with the understanding, as this court’s decision and order dated June 15, 2001 states, “is in no way designed nor intended to reduce or in anyway suspend the five year State’s prison sentence.”
Based upon the above, it is ordered that petitioner’s article 78 petition is denied.